UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Criminal Case No. 10-cr-00455-WYD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **GEORGE JOHN SCHULTE, aka JOHN SCHULTE,**
2. OBINNA ADIGHIJE, aka LARRY ADIGHIJE,
3. TRUNG PHAM, and
4. HERNAN RICAURTE,

    Defendants.

---

# ORDER

---

THIS MATTER comes before me on Defendant John Schulte's Motion for Judgment of Acquittal or In the Alternative, Motion for a New Trial [ECF No. 273], filed March 15, 2012. The Government filed a Response [ECF No. 275] on March 26, 2012 and Mr. Schulte filed his Reply [ECF No. 276] on March 30, 2012. Based on the motion, responses and the reply, Defendant Schulte's motion is **denied.**

## I.    BACKGROUND

In early August 2008, four individuals who were employees at Spectranetics, a medical device company in Colorado Springs, contacted the United States Attorney's office with a complaint that Mr. Schulte and others at Spectranetics had used unapproved medical devices on humans in violation of various provisions of law. The medical devices at issue were (1) surgical guidewires used in coronary and perpherial angioplasty

or atherectomy procedures, which were manufactured by a Japanese company called "FMD" (hereafter "FMD guidewires"); and (2) peripheral transluminal angioplasty ("PTA") balloons intended to be inserted into vascular tissue through catheters and inflated in order to compress arterial plaque against vessel walls, which were manufactured by a German company called "BMT" (hereafter "BMT balloons"). The Food and Drug Administration (FDA) began investigating the allegations to determine the scope of the use of the alleged contraband medical devices in human patients throughout the United States and to determine which employees, if any, were involved. On September 4, 2008, FDA Special Agent (SA) Dan Burke along with 30-40 other law enforcement officers executed a federal search warrant at the offices of Spectranetics. During the course of the search, SA Burke and Senior Special Agent Rob Cruz of Immigration and Customs Enforcement conducted a voluntary interview of Mr. Schulte in his office.

During the hour-long interview Mr. Schulte was asked a number of questions on a variety of topics including the use of unapproved and uncleared medical devices in human patients. Among the statements provided by Mr. Schulte were the representations enumerated in the Indictment, as follows:

1. Mr. Schulte told SA Burke that he was never given FMD guidewires while in Japan and did not physically carry any with him when returning to the United States.

2. Mr. Schulte told SA Burke that the FMD guidewires provided to physicians were not provided for use in human patients.

3. Mr. Schulte told SA Burke that he was not aware that FMD guidewires were provided to Dr. Bruce Murphy by members of his staff or by Hernan Ricaurte for use inside human patients.

4. Mr. Schulte told SA Burke that he did not know that Dr. Craig Walker or Dr. Robert Gallino were supplied BMT balloons by employees to use

> inside human patients.
>
> 5. SA Burke showed Mr. Schulte a copy of the evaluation forms entitled "BMT PTA Catheter Product Evaluation," and Mr. Schulte told SA Burke that he had never seen the forms.

At the time of the interview, SA Burke had documentary evidence, namely emails from the whistleblowers, which contradicted some of Mr. Schulte's statements. For instance, SA Burke possessed emails that proved Mr. Schulte had, in fact, carried FMD guidewires back from Japan and that in 2005 he had been aware that FMD guidewires had been provided to Dr. Murphy for evaluation in humans. During his testimony at trial, SA Burke explained he did not show any of these documents to Mr. Schulte because he did not want to reveal the identity of one of the whistleblowers, who was still at the company and because he wanted to see how Mr. Schulte would respond. Mr. Schulte did not ask to check any of his records or consult his emails during the interview.

In days following the search of Spectranetics and the interview with SA Burke, Mr. Schulte reviewed his email records on his own and with his attorneys and sent three separate correction letters on September 9, 2008, September 22, 2008, and January 16, 2009. At the trial Mr. Schulte took the stand and testified that he sent the first letter on September 9th to rectify inaccurate answers in Statements One, Two, and Three. He sent the second letter to explain that a review of emails had reminded him that he had seen an uncompleted, blank BMT Evaluation form, but he maintained that he'd never seen a completed, handwritten one. Finally, Mr. Schulte testified that after an additional comprehensive review of his records by his attorney, he sent the third letter to explain that his email review showed that he had in fact carried FMD guidewires into the country on two additional occasions.

The case proceeded to trial on February 6, 2012. Pursuant to Fed. R. Crim. P. 29(a), Mr. Schulte moved for acquittal on Count Two at the close of the government's case, arguing the statements were not material. I denied this motion based on the totality of the record at that time and concluded that I could not find insufficient evidence to sustain a conviction. At the conclusion of all the evidence, Mr. Schulte again moved for acquittal. *See* Defendants Pham and Schulte's Motion for Judgment of Acquittal [ECF No. 256], filed February 28, 2012. At trial, the jury was instructed on the elements of the offense of False Statements pursuant to the Tenth Circuit Pattern Jury instruction and the applicable case law as follows:

> Instruction No. 33
>
> John Schulte, is charged in Count Two with a violation of 18 U.S.C. Section 1001(a)(2). This law makes it a crime to knowingly and willfully make a false statement or representation concerning a material fact within the jurisdiction of the executive branch of the United States.
>
> To find the Defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:
>
> First: the Defendant made a false statement or representation to the government, specifically as detailed in Count Two of the Indictment;
>
> Second: the Defendant made the statement knowing it was false;
>
> Third: the Defendant made the statement willfully, that is deliberately, voluntarily and intentionally;
>
> Fourth: the statement was made in a matter within the jurisdiction of the executive branch of the United States, and
>
> Fifth: the statement was material to the United States Food and Drug Administration.
>
> A fact is "material" if it has a natural tendency to influence or is capable of influencing a decision of the United States Food and Drug Administration. It

> is not necessary that the United States Food and Drug Administration was
> in fact influenced in any way.

*See* Pattern Criminal Jury Instructions, 10th Cir., § 2.46.1 (2011); *United States v. Harrod*, 981 F.2d 1171, 1175 (10th Cir.1992). The jury was also instructed that they must unanimously agree which statement is false.

On March 1, 2012 following seventeen days of trial which included several hours of testimony from Mr. Schulte, the jury acquitted Mr. Schulte of all other counts, but found him guilty of Count Two of the Second Superseding Indictment charging him with Making False Statements in Relation to a Matter within the Jurisdiction of the Executive Branch, in violation of 18 U.S.C. § 1001. Accordingly, I denied Mr. Schulte's previous motion for acquittal as moot and ordered that any Rule 29 motion he wished to make be re-filed to address only Count Two.

**II.     MOTION FOR JUDGMENT OF ACQUITTAL**

In his motion, Mr. Schulte now requests that I enter a judgment of acquittal pursuant to Fed. R. Crim. Pro. 29 alleging insufficient evidence to sustain his conviction for False statements. He argues that first the government failed to prove that the allegedly false statements were material at the time they were made to the FDA because SA Burke already knew the answers to the questions he asked Mr. Schulte based on information contained in the whistleblower emails. Second, Mr. Schulte claims that the government failed to offer sufficient evidence that Mr. Schulte knowingly offered the false answers. Finally, Mr. Schulte asserts that the government failed to prove that statements four and five were false. As to Statement Four, Mr. Schulte claims it is true that he himself never provided BMT balloons to doctors for use in patients and he was

never questions specifically if he was aware whether other employees had done so. For Statement Five, he explains that while he did see the blank BMT evaluation forms, SA Burke had been asking about the handwritten, completed forms, which he had never seen.

In its Response, the Government opposes Mr. Schulte's motion for acquittal and argues that there was sufficient evidence through both the testimony of SA Burke, Mr. Schulte himself, and others to support the false statement conviction. The Government explains that the answers to these questions were at the core of the FDA investigation, making them material, and that Mr. Schulte was knowledgeable about the subject matter of the answers he gave because of the related internal investigation that took place weeks before the search. Furthermore, the Government argues that the jury was capable of assessing Mr. Schulte's state of mind through his testimony, particularly as it relates to his explanation for Statements Four and Five, and they rejected his explanation for his answers and the correction letters. Therefore, the motion should be denied.

Mr. Schulte's reply repeats the arguments in his motion and emphasizes that SA Burke already knew the answers to the questions that the government claims were material to the investigation. He also argues that falsity cannot be based soley on SA Burke's subjective interpretation of what Mr. Schulte's responses to other questions meant.

Federal Rule of Criminal Procedure 29(c) provides that "a defendant may move for a judgment of acquittal…within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." In examining the sufficiency of the evidence to decide a motion for acquittal, I must ask whether "taking the evidence—both direct and

circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." *United States v. Stiger*, 413 F.3d 1185, 1193 (10th Cir. 1005). When the Defendant makes a sufficiency-of-the-evidence challenge after he has presented his case-in-chief, I am not limited to reviewing the government's case-in-chief alone, but my review the entire record, including evidence that the defendant presents. *See United States v. Delgado-Uribe*, 363 F.3d 1077, 1082 (10th Cir. 2004).

"The evidence supporting the conviction must be substantial and do more than raise a suspicion of guilt." *United States v. McKissick*, 204 F.3d 1282, 1289 (10th Cir. 2000). However, I may not weigh conflicting evidence nor consider the credibility of witnesses because it is for the jury, as the fact finder to "resolve conflicting testimony, weigh the evidence, and draw inferences from the facts presented." *Id.* at 1289-90. My duty is to "determine whether the evidence, if believed, would establish each element of the crime." *United States v. Vallo*, 238 F.3d 1242, 1247 (10th Cir. 2001).

To obtain a conviction for making a false statement in violation of 18 U.S.C. § 1001, the government must establish beyond a reasonable doubt that: "(1) the defendant made a statement; (2) the statement was false, fictitious, or fraudulent as the defendant knew; (3) the statement was made knowingly and willfully; (4) the statement was within the jurisdiction of the federal agency; and (5) the statement was material." *United States v. Harrod*, 981 F.2d 1171, 1175 (10th Cir. 1992).

**A. Materiality**

Mr. Schulte's first claim is that the government failed to prove that at the time he made the five statements to SA Burke, any of those statements was material to the

government.  To be "material" under 18 U.S.C. § 1001, Mr. Schulte's statements must have had a "natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed."  *United States v. Finn*, 375 F.3d 1033, 1038 (10th Cir. 2004); *see also Harrod*, 981 F.2d at 1176.  However, it is not necessary that the agency, in this case the FDA, was in fact influenced in any way.

The evidence presented at trial was adequate to support a finding by the jury that Mr. Schulte's answers to SA Burke's questions were material because these answers were capable of influence the FDA's investigation of Spectranetics.  At trial SA Burke testified that he sought truthful answers from Mr. Schulte to find out which devices, if any, were being used in human patients without adequate FDA authorization, which doctors were involved, which employees were involved, and to compare the information from Mr. Schulte with what he had from the whistleblowers.  On the day the search warrant was executed, the FDA was trying to figure out exactly what was going on at Spectranetics and therefore, as the CEO, Mr. Schulte's answers to the interview questions were critical to the investigation.

Although Mr. Schulte makes an issue out of SA Burke's failure to offer to refresh Mr. Schulte's recollection with the whistleblower emails, I find this behavior irrelevant. Likewise, the fact that SA Burke may have already had possession of emails he believed to contain the truth to many of his questions does not change my analysis.  Since the statements need only be capable of influencing the DEA's investigation without having actually done so, it doesn't make a difference that SA Burke didn't change his mind based on Mr. Schulte's answers.  The answers were still capable of influencing the investigation because they defined the scope of Mr. Schulte's involvement in the

allegations.

This case is distinguishable from *United State v. Radetsky*, 535 F.2d 556, (10th Cir. 1976), upon which Mr. Schulte relies. In *Radetsky*, the defendant was charged with 25 counts of false statements in violation of 18 U.S.C § 1001 relating to several different drugs. However, the court held the statements in the Medicare submissions, which formed the basis of the 25 counts, were immaterial because the agency guidelines excluded payment for the drugs involved in those counts. In this case, Mr. Schulte's statements went to the heart of the allegations that the FDA was investigating. Unlike *Radetsky*, they were not about behavior that unrelated to the allegations that Mr. Schulte and other employees at Spectranetics were using unapproved medical devices in human patients. Accordingly, I find that a reasonable jury could have concluded that these answers were in fact material to the FDA's investigation.

### B. Knowingly

Next, Mr. Schulte argues that the Government failed to prove that the false statements were made knowingly. He argues the morning of September 4, 2008 was "chaotic," that many of the interview questions pertained to events that transpired three years earlier, that he agreed to the interview immediately, and that he voluntarily tried to correct his answers through the subsequent correction letters he sent to SA Burke. As the Government notes in its response brief, the jury was free to weigh all of this evidence from Mr. Schulte's testimony against that which the Government presented through SA Burke and Emile Geisenheimer, Chairman of the Board of Directors for Spectranetics and a member of the company's audit committee. Mr. Geisenheimer testified about Mr. Schulte's behavior on the day that Spectranetics was searched, and was appalled by

what he perceived to be Mr. Schulte's decision to lie to the FDA agents about his knowledge of the use of the FMD guidewires and BMT balloons in humans. Additionally, the jury heard testimony about the internal investigation of the whistleblower complaints at Spectranetics, and could have concluded that this would have sufficiently refreshed Mr. Schulte's recollection about the events at issue in the allegations.

While Mr. Schulte's explanation may be believable, as I explained above, it is not my role to weigh conflicting evidence or consider the credibility of witnesses. That is the role of the jury. Since Mr. Schulte took the stand, the jury was able to assess his veracity as to his state of mind. Based on the verdict, the jury rejected Mr. Schulte's contention that he was trying to be cooperative and that any inaccuracies in his answers were merely an innocent failure of memory. The evidence presented in both the Government and the Defendant's case-in-chief is sufficient to allow a finder of fact to determine that these statements were made knowingly.

### C. Falsity

Finally, Mr. Schulte argues that Statements Four and Five were not actually false in light of the direct questions he was asked. For Statement Four, he states that he was never asked directly about whether any employees had supplied balloons to Doctors Walker and Gallino but only whether rogue employees had done the testing. Therefore, his answer that he did not know, was truthful. As to Statement Five, Mr. Schulte maintains that when he said he'd never seen the BMT Evaluation forms, he meant the completed ones that SA Burke showed him, not the forms generally before they were filled out.

Relying on Ninth Circuit case law, Mr. Schulte argues his conviction cannot stand

where the government relied on SA Burke's subjective interpretation of Mr. Schulte's responses to the interview questions to form the basis of the false statement charge. *See United States v. Jiang*, 476 F.3d 1026, 1030 (9th Cir 2007). In *Jiang*, the Ninth Circuit held that the testimony and interpretation of one agent alone could not sustain a materially false statement charge. *Id.* However in this case, contrary to Mr. Schulte's assertions, SA Burke's testimony is not the only evidence that Mr. Schulte uttered a false statement. The jury heard testimony from SA Burke, Mr. Schulte himself, and Emile Guissenheimer that was all relevant to whether Mr. Schulte lied to the FDA agents during his interview. Therefore, this case is distinguishable from *Jiang*. Moreover, in the absence of case law from the Tenth Circuit adopting *Jiang's* reasoning, I am not bound by that decision.

Additionally, Mr. Schulte's reliance on *United States v. Migliaccio*, 34 F.3d 1517, 1525 (10th Cir. 1994) is misplaced. In *Migliaccio*, two doctors were convicted of conspiracy and mail fraud after they sought reimbursement for certain procedures. *Id.* at 1520. The government alleged the doctors had purposefully used incorrect terminology to describe procedures so that they would be reimbursed. *Id.* Drawing a parallel to § 1001 cases, the court held that in the case of mail fraud: "the government bears the burden to negate any reasonable interpretations that would make a defendant's statement factually correct." Id. at 1525. The court reversed the conviction because the district court failed to instruct the jury concerning the defendant's theory that his interpretation of the relevant regulations was reasonable and therefore he lacked the intent to make a false statement. *Id.* This holding was in the context of jury instructions relating to intent and theory of the defense instructions. The reference to "negating

reasonable interpretations" had to do with a defendant's interpretation of ambiguous regulatory rules, not interpreting the statements of the defendants themselves. *Id.* Therefore, this holding is taken out of context and it is inapposite to rely upon it in the context of sufficient proof of falsity.

With respect to both statements, the evidence is sufficient to allow a finder of fact to determine that these statements were in fact false. To the extent Mr. Schulte's argues that he interpreted the questions in a way that differed from what SA Burke believed he was asking, the jury was free to consider and reject this explanation at trial.

### III.   MOTION FOR NEW TRIAL

In the alternative to judgment of acquittal, Mr. Schulte also requests a new trial pursuant to Fed. R. Crim. P. 33 on the grounds that the jury's conviction on Count Two may have been based on an allegedly false statement that was not sufficiently supported by the evidence. He argues that at least one, if not all, of the five statements lacked sufficient proof to form the basis of a guilty conviction. Since the jury returned a general verdict, without specifying which statement formed the basis of that verdict, the verdict cannot stand because the jury may have relied on an inadequately supported statement. Therefore, Mr. Schulte argues he should be granted a new trial.

In its response, the Government argues there was sufficient evidence submitted to the jury on each of the five statements. It also argues the unanimity instruction would cure any issue related to the false statements because the jury was required to unanimously agree which statement it believed was false, even though it returned a general verdict.

In his reply, Mr. Schulte reiterates that if any statement was inadequately proved, it

should not have been submitted to the jury and requires a new trial because the jury did not indicate which statement it unanimously agreed on.

Fed.R.Crim.P. 33 governs new trials in criminal cases and provides that "[t]he court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice. . . ." A motion for a new trial "is not regarded with favor and should only be granted with great caution." *United States v. Sinclair*, 109 F.2d 1527, 1531 (10th Cir. 1997); *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir. 1987) ("Courts disfavor new trials, and exercise great caution in granting them"). "A motion for a new trial lies within the discretion of the trial court and will not be reversed absent a plain abuse of discretion." *Troutman*, 814 F.2d at 1455.

As I have explained above, Mr. Schulte's insufficiency of the evidence claims are without merit. While it is true that a general verdict on an 18 U.S.C. § 1001 count must be overturned if any of the statements submitted for consideration by the jury were insufficiently supported by the evidence, that is not the case here. *See United States v. Radetsky*, 535 F.2d 556, 573 (10th Cir. 1976).

## IV. CONCLUSION

Based upon my examination of all the evidence presented at trial by the Government and the Defendant, and drawing all reasonable inferences in the light most favorable to the government, I find that a reasonable jury could find the Defendant guilty beyond a reasonable doubt. Additionally, I find that all of Mr. Schulte's insufficiency-of-the-evidence claims are without merit and therefore, a new trial, pursuant to Fed. R. Crim.P. 33 is not required in the interest of justice. Accordingly, it is

ORDERED that Defendant John Schulte's Motion for Judgment of Acquittal, or, In

the Alternative, Motion for a New Trial [ECF No. 273], filed March 15, 2012, is **DENIED.**

Dated: May 14, 2012

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge